UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUSTIN BAKER,
                    Plaintiff,

        v.

LIFETIME ADVOCACY PLUS et al.,
                    Defendants.

CASE NO. 2:25-cv-01785-TL

ORDER ON MOTION FOR
SUMMARY JUDGMENT

This matter is before the Court on Defendants' "Motion for Summary Judgment Dismissal With Prejudice." Dkt. No. 71. Defendants seek to dismiss Plaintiff Justin Baker's Amended Complaint (Dkt. No. 13). Having considered the motion, Plaintiff's Motion to Deny Defendant's Motion and Proposed Order[1] ("Motion to Deny") (Dkt. No. 74), Defendants' Reply (Dkt. No. 87), and the relevant record, the Court GRANTS Defendants' motion.

---

[1] While not procedurally correct, *see* LCR 7(b)(2), the Court considers Docket No. 74 to be Plaintiff's response to Defendants' motion. The document and its supporting declaration was filed with a cross-reference to Defendants' motion. *See* Dkt. Nos. 74, 75. *See also infra* at 6.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 1

## I.    BACKGROUND

Plaintiff Justin Baker is an individual who proceeds pro se on the instant matter, bringing legal claims against Defendants, which stem from the management of his special-needs trust agreement and alleged conduct by Defendants in the handling of the trust. Defendants are Lifetime Advocacy Plus ("Defendant LA+"); Ursula Nash, LA+ Financial Services Manager; Danika Helm, LA+ Intake Manager; Brooke Stinson, Estate & Trust Manager, LA+; Jean Paul Barnard, former counsel for LA+; and Benjamin VandenBerghe, former counsel for LA+ (collectively, "Defendants").

On May 6, 2025, Defendant LA+ and Plaintiff signed and entered into a Master Trust Agreement to establish a special-needs trust for Plaintiff. *See* Dkt. No. 72 at 8–9 (Trust Agreement). This trust made Defendant LA+ the trustee to Plaintiff's funds and Plaintiff the beneficiary of the trust. *Id*. at 8. To finance the trust, on June 5, 2026, Plaintiff deposited $39,735.00 into it. Dkt. No. 71 at 2. The trust established that Defendant LA+ would maintain control over the funds, and that any time Plaintiff wanted access to the funds, he would need to make a disbursement request to Defendant LA+. Dkt. No. 72 at 14–15. Among other provisions, the trust provides that Defendant LA+ shall "hold, administer and distribute" the amounts in Plaintiff's account for Plaintiff's benefit, with the exception of "payments for the reasonable compensation of the Trustee to manage the trust, or for reasonable costs associated with investment, legal or other services rendered in connection with the operation of the trust[.]" *Id*. Defendant LA+ charged Plaintiff a trustee fee of $2,123.50 to administer the trust. Dkt. No. 72 at 43 (Trust Accounting Summary); *see also* Dkt. No. 13 (Amended Complaint) at 8 (acknowledging Plaintiff had paid roughly $2,000 to open trust account). Shortly after Plaintiff paid the initial amount to finance the trust and the administration fee, he made several requests for disbursements to pay for various life expenses. Dkt. No. 72 at 2 ¶¶ 3–4 (Nash Decl.).

ORDER ON MOTION FOR SUMMARY JUDGMENT – 2

On June 9, 2025, Plaintiff requested a disbursement of $5,000 to purchase various home furnishings. *Id*. at 2 ¶ 3. The next day on June 10, 2025, Plaintiff modified his request to $13,000. *Id*. On June 12, 2025, Defendant LA+ approved the $13,000 disbursement. *Id*. On June 17, 2025, Plaintiff requested an additional disbursement of $5,000 for Invisalign braces, which was also approved. *Id*. at 2 ¶ 4. That same day, Defendants notified Plaintiff by letter that large disbursements were rapidly depleting Plaintiff's trust account. *Id*. at 23 (Defendant LA+ Rapid Depletion Letter to Plaintiff).

Further communication between the Parties eventually led to Plaintiff's sending a series of emails and engaging in legal action against Defendants. Between July 14, 2025, and July 16, 2025, Plaintiff, Defendant Stinson, and Defendant Nash corresponded by email about Plaintiff's questions and requests. Dkt. No. 72 at 25–32 (Emails). During that correspondence, Plaintiff requested that Defendant Nash accommodate him with an afternoon phone call due to his chronic fatigue syndrome, fibromyalgia, and sleep condition. *Id*. at 29; *see also* Dkt. No. 13 at 9. A few hours later, Plaintiff sent another email requesting that Defendant LA+ accommodate him by waiving email and phone call fees, which he asserts he was never told about before signing the trust agreement. Dkt. No. 72 at 28. Defendant Nash agreed to the afternoon phone call accommodation and, on the afternoon of April 14, 2025, spoke to Plaintiff about his trust account concerns. *See id*. at 26–27 (Defendant Nash's email memorialization of phone call with Plaintiff). After the call, Defendant Nash sent an email explaining the accounting for the disbursements, and fee costs. *Id.* Defendant Nash further explained that Defendant LA+ had waived several recent fees for Plaintiff, but that Plaintiff would be charged for phone call and email correspondence moving forward. *Id.*

Following Plaintiff and Defendant Nash's phone call, Plaintiff began to take legal action. Plaintiff emailed Defendant Nash a copy of a small-claims case he had filed against her in King

County District Court. *Id*. at 26. Within the same email, Plaintiff raised, among other things, complaints about an alleged incorrect disbursement and a request to waive email and phone call fees. *Id*. The next morning, on July 16, 2025, Plaintiff sent Defendant Nash, Defendant Stinson, and Defendant Helm notice that he sought an investigation of Defendant LA+ with the Washington State Department of Financial Institutions, and that he was seeking a vulnerable adult protection order against Defendant Nash in King County Superior Court. *Id*. at 25. Defendant Barnard and Defendant VandenBerghe represented Defendant Nash in the King County Superior Court vulnerable adult protection order matter, which was ultimately denied and dismissed. *See* Dkt. No. 73 at 6 (King County Superior Court Denial Order). Plaintiff then followed up the state-court litigation with a written complaint to the Washington State Attorney General's Office – Consumer Resource Center ("WA AGO") against Defendant Nash and Defendant LA+. *Id*. at 16–17 (WA AGO Email) (acknowledging receipt of complaint). Defendant Barnard and Defendant VandenBerghe represented Defendant Nash in the WA AGO matter, which the WA AGO closed without action. *Id*.

On September 18, 2025, Plaintiff filed a civil action in this Court. Dkt. No. 10 (Complaint). On October 24, 2025, he filed an Amended Complaint. Dkt. No. 13. In the Amended Complaint, Plaintiff pleads the following claims: Count I: Defamation under 28 U.S.C. § 4101; Count II: Negligence under 46 C.F.R. § 5.29; Count III: Breach of Fiduciary Duty under 29 U.S.C. § 1109; Count IV: Prohibition of Discrimination by Public Accommodations under 42 U.S.C. § 12182; Count V: Retaliation or Coercion under 28 C.F.R. § 36.206; Count VI: Obligations with Respect to Disclosures of Personal Information under 15 U.S.C. § 6802; and Count VII: Vexatious Litigation under 28 U.S.C. § 1927. Dkt. No. 13 at 5.

On February 25, 2026, Defendants filed the instant motion. Dkt. No. 71.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c)(1) (explaining the ways in which a "party asserting that a fact cannot be or is genuinely disputed must support the assertion"). Additionally, "all justifiable inferences" must be drawn in the non-movant's favor, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), "only in the sense that, where the facts specifically averred by [the nonmoving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). If the moving party meets its burden, and if the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary

judgment. *Nissan Fire & Marine*, 210 F.3d at 1103 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

## III.    DISCUSSION

As a preliminary matter, Defendants argue that the Court should consider their instant motion unopposed because Plaintiff did not file a proper response to Defendants' motion in accordance with Local Civil Rule 7(d)(4), which describes the procedure for opposing a motion for summary judgment, and instead filed a motion requesting that the Court deny Defendants' motion. *See* Dkt. No. 87 at 3–4. But although Plaintiff did not file a response to the instant motion, he *did* move to deny the motion, which is itself a motion that the Court must rule on. More importantly, though, the Court prefers to rule on the merits of the instant motion, with all arguments before it, rather than ignore arguments that Plaintiff put on the record, albeit procedurally incorrectly. Therefore, the Court disagrees with Defendants and finds Plaintiff did oppose their motion.

### A.    Count I: Defamation

"To prevail on a defamation claim, a plaintiff must show (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages." *Sanchez v. Washington*, No. C21-5915, 2022 WL 11229086, at *8 (W.D. Wash. Oct. 19, 2022) (citing *Mohr v. Grant*, 105 Wn.2d 812, 822, 108 P.3d 768 (2005)). "To survive a defense motion for summary judgment, a defamation plaintiff must allege facts that would raise a genuine issue of fact for the jury as to each element." *Mohr*, 153 Wn.2d at 822. In Washington, "the 'litigation privilege' is a judicially created privilege that protects participants—including attorneys, parties, and witnesses—in a judicial proceeding against civil liability for statements they make in the course of that proceeding." *Young v. Rayan*, 27 Wn. App. 2d 500, 508, 533 P.3d 123 (2023) (footnote omitted). "Statements 'are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the

statements are legally sufficient to obtain that relief.'" *Id*. (quoting *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980)). Only "statements having 'no connection whatever' with the litigation are not privileged." *Id*. (quoting *Demopolis v. Peoples Nat'l Bank of Wash.*, 59 Wn. App. 105, 110, 796 P.2d 426 (1990)). Notably, the litigation privilege "often arises in the context of defamation suits." *Id*. at 510. Summary judgment dismissal is appropriate where the litigation privilege applies. *Id*. at 515–16 (concluding trial court correctly dismissed defamation claim due to litigation privilege).

Defendants have met their burden of showing that there is no genuine dispute as to any material fact for Plaintiff's defamation claim. Defendants demonstrate that the purportedly defamatory statements upon which Plaintiff bases his claim are ones that Defendant Barnard made during a hearing in which Defendant Barnard represented Defendant Nash in the Plaintiff's petition for protection order. Dkt. No. 73 at 2 ¶ 3 (Barnard Decl.). Further, Defendants also demonstrate that statements Defendant Barnard and Defendant VandenBerghe made to the WA AGO in response to Plaintiff's written complaint were also made during the course of litigation. *Id*. at 2 ¶ 4. To further support these declarations, Defendants provide proof of the King County Superior Court protection-order litigation (Dkt. No. 73 at 6) and the WA AGO complaint-closure confirmation (*Id*. 16–17). Plaintiff's defamation claim refers only to statements that Defendants Barnard and VandenBerghe made during the course of the King County Superior Court litigation, as well as Defendants Barnard and VandenBerghe's submission of the King County Superior Court dismissal order and statements regarding that order to the WA AGO complaint. *See* Dkt. No. 13 at 4, 8–9.

In his Motion to Deny, Plaintiff's only response to Defendants' position is that these statements do not qualify as litigation privilege because "[d]efamation is when you are not representing your clients truthfully, defamation is when you intend on smearing your opponents

with falsehoods and uploading frivolous filings to the court." Dkt. No. 74 at 2. Plaintiff provides no legal authority to support why the Court should apply his unsupported interpretation of the definition of defamation.

The Court's decision as to Plaintiff's defamation claim is an open-and-shut one. Because the litigation privilege applies to the statements that Plaintiff asserts are defamatory, there is no genuine dispute that Plaintiff cannot prove the claim. Therefore, Count I is DISMISSED WITH PREJUDICE.

**B.      Count II: Negligence**

In Count II, Plaintiff brings a claim for negligence under 46 C.F.R. § 5.29. The Court finds that Defendants have met their burden of showing that there is no genuine dispute as to any material fact with respect Plaintiff's negligence claim because, as Defendants assert, (*see* Dkt. No. 71 at 15), this regulation does not apply to the circumstances of this case. Notably, Plaintiff recently brought this exact same claim in another matter before another court in this District, and the court explained that this regulation did not apply to him, and why. *See Baker v. Wash. State Dep't of Soc. & Health Servs.*, No. C25-2302, 2025 WL 3534209, at *2 (W.D. Wash. Dec. 10, 2025). In reference to Plaintiff's 46 C.F.R. § 5.29 claim, the court stated,

> That regulation provides the definition of negligence in a section regarding "Marine Investigation Regulations—Personnel Action" to "establish policies for administrative actions against mariners' credentials or endorsements issued by the Coast Guard." 46 U.S.C. § 5.3. Mr. Baker does not explain how his allegations fall within the ambit of that regulation, and the Court dismisses this claim."

*Id.* Plaintiff's claim fares no better in the present matter, as the underlying facts do not relate to marine-investigation regulations, and Plaintiff does not attempt to explain otherwise in his Motion to Deny. Therefore, Count II is DISMISSED WITH PREJUDICE.

## C.    Count III: Breach of Fiduciary Duty

Plaintiff brings a claim of breach of fiduciary duty under 29 U.S.C. § 1109. Dkt. No. 13 at 5. The Court finds that Defendants have met their burden of showing that there is no genuine dispute as to any material fact regarding this claim because, as Defendants correctly point out, this statute does not apply to Plaintiff. Dkt. No. 71 at 17–18. This statute is part of the Employee Retirement Income Security Act of 1974 ("ERISA") and relates to fiduciary duties owed by an employer to an employee through an employee benefit plan. *See* 29 U.S.C. § 1101(a) (setting forth scope of the statute and stating that "[t]his part shall apply to any employee benefit plan described in section 1003(a) of this title"); 29 U.S.C. § 1003(a). Section 1003(a) states:

> Except as provided in subsection (b) or (c) and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any *employee* benefit plan if it is established or maintained: (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both.

29 U.S.C. § 1003(a) (emphasis added). Indeed, Chapter 18 of Title 29 U.S.C. is called the "Employee Retirement Income Security Program." It is indisputable that Defendants and Plaintiff do not have an employer–employee relationship. This statute is simply inapplicable to Plaintiff's situation, and Plaintiff cannot claim an injury under 29 U.S.C. § 1109. Therefore, Count III is DISMISSED WITH PREJUDICE.

## D.    Count IV: Discrimination

In Count IV, Plaintiff alleges discrimination under 42 U.S.C. § 12182. Dkt. No. 13 at 5. This statute is part of the Americans with Disabilities Act ("ADA"). It prohibits places of public accommodation from discriminating against people with disabilities "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . ." 42 U.S.C. § 12182(a). For a plaintiff to prevail on a Title III

discrimination claim, the plaintiff must establish that: (1) they are disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff by denying the plaintiff public accommodations because of the plaintiff's disability. *Lopez v. Catalina Channel Express Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020).

Although Plaintiff does not respond to Defendants' arguments in his Motion to Deny, Plaintiff's Amended Complaint provides background arguments as to his claims. Plaintiff alleges, "All defendants are discriminating against [Plaintiff] and his communication needs and refusing to allow [Plaintiff] necessary accommodations so that [Plaintiff] can equally access and enjoy his trust like the other beneficiaries, and the defendants are treating [Plaintiff] differently than the other beneficiaries." Dkt. No. 13 at 12. Plaintiff asserts Defendants failed to provide him an accommodation by "repeatedly providing a PDF document and having [Plaintiff] read it, even after [Plaintiff] made them aware of his need for verbal explanations" and "requested a reasonable accommodation that they provide further verbal explanations . . . ." *Id*. at 9. Further, Plaintiff alleges that Defendants denied his "ADA reasonable accommodation for an afternoon telephone appointment to accommodate [Plaintiff]'s chronic fatigue syndrome and fibromyalgia and sleep condition, so that [Plaintiff] could understand the trust protocols upon opening his new trust." *Id*. at 9. Additionally, Plaintiff alleges that he was discriminated against by Defendants when he was told to "buy food from a food bank instead of using his trust funds for necessary and needed extra food." *Id*. at 6. Defendants assert that Plaintiff "has failed to allege, let alone support any claim that he was denied a public accommodation because of a disability." Dkt. No. 71 at 18. Further, as provided below, Defendants provide arguments as to why Plaintiff was not discriminated against (*see id*. at 18–19), as well as email exhibits showing correspondence between Plaintiff and Defendant Nash (*see* Dkt. No. 72 at 25–36).

**1.    Whether Plaintiff is disabled**

Defendants do not appear to dispute that Plaintiff is disabled within the meaning of the ADA. Therefore, the Court will assume Plaintiff meets this factor for purposes of this order.

**2.    Whether Defendants meet the Public Accommodation Requirement**

Title III defines "places of public accommodation" as private entities that own, operate, or lease facilities affecting commerce and fall into one of 12 categories. *See* 42 U.S.C. § 12181(7); *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (clarifying that "places of public accommodation" are "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services"). The ADA defines private entities that are considered public accommodation as:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

Defendant LA+ is a "fiduciary nonprofit agency . . . providing exemplary Trustee, Guardianship and Conservatorship services to citizens with significant life challenges in the State of Washington." Lifetime Advocacy Plus, *Who We Are*, (last visited June 5, 2026), https://www.laplus.org/who-we-are [https://perma.cc/DBE7-5S59]; *see also* Dkt. No. 13 at 4 (Plaintiff's Amended Complaint asserts that Defendant LA+ is a "special needs trust manager"). Plaintiff does not allege that any of the Defendants own, lease, or operate a place of public accommodation. As such, it is evident that Defendant LA+ is not a "place of public accommodation."[2] What qualifies as a place of public accommodation has been explained to Mr. Baker by another court in this District. *See Baker v. Emerald Condos*, No. C25-1989, 2025 WL 3718654, at *3 (W.D. Wash. Dec. 23, 2025). Therefore, Count IV for a violation of Title III of the ADA is DISMISSED WITH PREJUDICE.

---

[2] In any event, the Court notes that, Plaintiff's claims all relate to disputes arising from his domicile at his personal residence. *See generally* Dkt. No. 13.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 12

### 3.    Whether Defendants discriminated against Plaintiff

Even though Plaintiff's claim fails on the ground that Plaintiff cannot meet the second element and demonstrate that Defendants meet the public-accommodations definition, the Court will nonetheless discuss the discrimination allegations, as they are also relevant to Plaintiff's retaliation claim. *See infra* Section III.E. The Court will address each of Plaintiff's discrimination claims in turn.

### a.    Request for Verbal Explanations and Request for Afternoon Phone Call

The Court finds that Defendants have met their burden of showing that there is no genuine dispute as to any material fact for Plaintiff's discrimination claim(s) related to verbal explanations and an afternoon phone call accommodation. Defendants provide evidence that, after Plaintiff requested to speak by telephone with Defendant Nash to ask questions and raise issues with his trust, Defendant Nash accommodated Plaintiff's needs by speaking with him by telephone on July 14, 2025. *See* Dkt. No. 72 at 26–27. Not only did Defendant Nash agree to speak with Plaintiff over the phone to assist him, but also after Defendant Nash proposed a morning call, which Plaintiff declined and requested an afternoon call due to his chronic fatigue syndrome, fibromyalgia, and sleep condition,[3] Defendant Nash agreed to an afternoon phone call. *Id*. at 26–30. Moreover, Defendants provide evidence that Plaintiff was notified that Defendant Nash had waived the fees stemming from the July 14, 2025, phone call; the email correspondence surrounding the call; and the listening of Plaintiff's voicemails surrounding the call. *Id*. at 27. Further, Defendants show that Plaintiff attempted to call Defendant Nash during the morning of July 15, 2025 (Dkt. No. 72 at 25)—evidence that Plaintiff was able and willing to speak over the phone in the morning.

---

[3] These medical conditions are referenced in Plaintiff's Amended Complaint. *See* Dkt. No. 13 at 9.

In Plaintiff's Motion to Deny, he does not respond to Defendants' arguments about why there is no genuine dispute as to any material fact. *See generally* Dkt. No. 71. Nowhere in Plaintiff's motion, let alone in his Amended Complaint, does Plaintiff explain why his conditions require that he receive oral explanation of every correspondence he has with representatives of Defendant LA+. Plaintiff's Motion to Deny does not acknowledge that he was provided with an afternoon phone call by Defendant Nash on July 14, 2025. Plaintiff does not respond to any of the email evidence provided by Defendants at all, nor does he provide exhibits of his own. Without evidence from Plaintiff in response, let alone an acknowledgement of Defendants' arguments, the Court concludes that Plaintiff has failed to produce enough evidence to create a genuine issue of material fact and cannot meet the third prong of a Title III discrimination claim. *See* Fed. R. Civ. P. 56(c).

### b.    Referral to Food Bank

Defendants assert that Defendant Nash suggested to Plaintiff that he could consider going to a food bank for food instead of using his trust, but that it was in the context of a warning from Defendant Nash that Plaintiff's trust was being quickly depleted. *See* Dkt. No. 71 at 17; *see also* Dkt. No. 72 at 23. Plaintiff does not respond to this argument from Defendants, nor does he even reference his food-bank claim in his Motion to Deny. *See generally* Dkt. No. 71. Therefore, there is no argument and evidence before the Court that Plaintiff was denied funds and directed to go to a food bank *because of* his disability. In fact, Plaintiff's Amended Complaint does not even claim that the suggestion that he go to a food bank had anything to do with his disability. Rather, Plaintiff felt that he should have had access to his trust for food purchases. Dkt. No. 13 at 6. Without argument or evidence from Plaintiff to respond to Defendants' factual assertions, the Court concludes that Plaintiff has failed to produce enough evidence to create a genuine issue of material fact and cannot meet the third prong of a Title III discrimination claim.

Therefore, Plaintiff's claims of discrimination are DISMISSED.

**E.    Count V: Retaliation or Coercion**

Under Count V, Plaintiff alleges "retaliation or coercion" under 28 C.F.R. § 36.206. Dkt. No. 13 at 5. This regulation states:

> No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [ADA] or this part.

28 C.F.R. § 36.206(a). It further provides:

> No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the [ADA] or this part.

§ 36.206(b). Prohibited conduct also includes "[t]hreatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;" *id.* § 36.206(c)(2), and "[r]etaliating against any person because that person has participated in any investigation or action to enforce the Act or this part," *id.* § 36.206(c)(4).

Defendants argue that Plaintiff has failed to allege, let alone support, a claim for retaliation under Part 36.206. Plaintiff alleges, "Ursula Nash retaliated and attempted to terminate [Plaintiff's] newly opened trust immediately after Plaintiff made complaints to the King County Superior Court and Washington State attorney general's office[.]" Dkt. No. 13 at 6. In addition to this claim of retaliation, Plaintiff also alleges that Defendants retaliated against him during the King County Superior Court litigation. Specifically, Plaintiff alleges that during Defendant VandenBerghe and Defendant Barnard's representation of Defendant Nash in King

County Superior Court, the attorney-Defendants "retaliat[ed] and ma[de] knowingly untrue defamatory false statements about [Plaintiff] to the Superior Court of King County, in retaliation for [Plaintiff] filing a protective order against employee Ursula Nash." *Id*. at 8.

The Court finds that Defendants have met their burden of showing that there is no genuine dispute as to any material fact for Plaintiff's retaliation claim. Defendants' exhibits show that Defendant Nash did not discriminate against Plaintiff, *see supra* Section III.D., as required by Section 36.206. As discussed above, Plaintiff does not provide evidence of his own in response to any of the exhibits Defendants have submitted to substantiate their position. Further, Defendants show that the attempted shutdown of the trust account was not because Plaintiff "opposed any act or practice made unlawful," 28 C.F.R. § 36.206(a), under the regulation. Instead, Defendants' email exhibits show that Plaintiff opposed Defendants Nash, Stinson, and Helm's communication style and the handling of Plaintiff's account funds—acts which were not unlawful. Plaintiff provides no authority in his Motion to Deny as to why any acts by Defendants violated the ADA, or could be considered retaliatory. Instead, he asserts that the attempted closing of his account was an act of retaliation, without regard for what the regulation he cites actually requires him to prove—that the retaliation occurred *because* Plaintiff opposed an unlawful act by Defendants. Additionally, Plaintiff's claim that statements made in court by Defendant VandenBerghe and Defendant Barnard are retaliatory is not logical. Even though Plaintiff asserts the statements made in court were false, that does not necessarily make them retaliatory. These statements were made by counsel in a court proceeding in which counsel was present to represent and defend their client's interest, in a proceeding *brought by Plaintiff*. The act of defending a client in court cannot be considered an act of retaliation against the party bringing the legal action. Therefore, Plaintiff's claim for discrimination is DISMISSED WITH PREJUDICE.

**F.      Count VI: Obligations with Respect to Disclosures of Personal Information**

Plaintiff brings a claim of obligations with respect to disclosures of personal information under 15 U.S.C. § 6802. Dkt. No. 13 at 5. Defendants argue that Plaintiff lacks standing to bring a claim under 15 U.S.C. § 6802 because the statute does not convey a private right of action. Dkt. No. 71 at 19–20. Defendants are correct. 15 U.S.C. § 6802 is a provision within the Gramm-Leach-Bliley Act, which does not provide for a private right of action. *See Haynes v. Bank of Am.*, No. C09-3579, 2009 WL 10680861, at *5 (C.D. Cal. Sep. 9, 2009) (dismissing plaintiff's claims under Gramm-Leach-Bliley Act because the Act does not provide for a private right of action). In addition, Plaintiff was recently told not long ago by another court in this District that 15 U.S.C. § 6802 is "a section of the U.S. code that pertains to the Gramm-Leach-Bliley Act and limits how financial institutions can disclose consumers' nonpublic personal information to nonaffiliated third parties. The [Act] does not confer a private right of action." *Baker v. Emerald Condos*, 2025 WL 3718654, at *2 (citations omitted). Because Plaintiff is a private individual, he cannot bring a claim under this statute, and his claim must be dismissed. Therefore, Count VI is DISMISSED WITH PREJUDICE.

**G.      Count VII: Vexatious Litigation**

In his final Count, Plaintiff alleges vexatious litigation under 28 U.S.C. § 1927. Dkt. No. 13 at 5. Under this statute,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required *by the court* to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). Again, Defendants assert that Plaintiff brings a claim that does not convey a private right of action and that, consequently, Count VII must be dismissed.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 17

Dkt. No. 71 at 20. Plaintiff provides no legal authority in response to Defendants' legal arguments. *See generally* Dkt. No. 74.

Defendants are correct—a plaintiff can only bring a cause of action to enforce a federal law if the law provides a private right of action. *See First Pac. Bancorp, Inc. v. Helfer,* 224 F.3d 1117, 1121 (9th Cir. 2000). Title 28 U.S.C. § 1927 allows a court to order an attorney or other person conducting cases to personally satisfy a monetary award that may be imposed under certain circumstances. The statute does not create a private right of action in federal court—that is to say, Plaintiff, a private citizen, cannot sue under this statute. *See also Jaiyeola v. Brundage,* No. C25-9724, 2026 WL 45090, at *1 (N.D. Cal. Jan. 7, 2026). With no private right of action to bring a claim under 28 U.S.C. § 1927, Count VII must be dismissed for lack of subject matter jurisdiction. *See Markley v. City of Seattle,* No. C22-5038, 2022 WL 374415, at *1 (W.D. Wash. Feb. 8, 2022). Therefore, Count VII is DISMISSED WITH PREJUDICE.

## IV.    CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment Dismissal With Prejudice (Dkt. No. 71) is GRANTED. It is hereby ORDERED:

(1)    Plaintiff's Motion to Deny Defendant's Motion (Dkt. No. 74) is DENIED.

(2)    Plaintiff's action is DISMISSED WITH PREJUDICE. Judgment will be entered separately in accordance with this order.

(3)    The clerk is DIRECTED to STRIKE all remaining motions from the docket and close the case.

Dated this 5th day of June, 2026.

Tana Lin
United States District Judge

ORDER ON MOTION FOR SUMMARY JUDGMENT – 18